## Case No. 9,605.

### MILLIGAN v. HOVEY.

[3 Biss. 13;[1] 14 Int. Rev. Rec. 20; 3 Chi. Leg. News, 321; 4 Am. Law T. Rep. U. S. Cts. 136.]

Circuit Court, D. Indiana. May, 1871.

ARMY AND NAVY—MILITARY COMMISSIONS—WHEN UNCONSTITUTIONAL—LIABILITY OF MEMBERS—LIMITATION OF ACTION—DAMAGES.

1. Military commissions and their acts, in the trial of persons not in the military service, during the late civil war, in states where the courts were undisturbed, were unconstitutional.

2. The members of such commissions, and officers of the United States army, are liable for arrest and imprisonment ordered by them in such states, even though ratified and approved by the executive department of the government.

3. They are also liable for imprisonment suffered beyond their jurisdiction, if such imprisonment was the natural and necessary result of the sentence pronounced by them.

4. The limitation imposed by the act of congress of March 3, 1863 [12 Stat. 756], was within the power of congress, and binding upon state tribunals.

5. The defendants are not liable for any acts, nor any portion of the term of imprisonment, prior to two years before the commencement of the action: the statute begins to run notwithstanding that the imprisonment was a continued act.

6. It seems that an act of congress would not be complete justification, if the trial by a military commission was forbidden by the constitution.

7. The damages to be allowed should be compensatory, and not exemplary or punitive.

8. The action of military commissions, and duties of army officers, commented on.

This was an action of trespass, by Lambdin P. Milligan, for an alleged wrongful arrest and imprisonment. The principal facts which gave rise to the controversy were undisputed. On the 5th of October, 1864, during the Rebellion, the plaintiff was a citizen of Indiana, residing in the county of Huntington, and not engaged in the military or naval service of the United States. General Hovey, one of the defendants, was the military commander of the district of Indiana, duly appointed by the president. On that day General Hovey, as such commander, ordered an officer and some soldiers to proceed to Huntington and arrest the plaintiff. He was accordingly arrested at his house there and brought to Indianapolis, and confined in prison. He was shortly after tried before a military commission on certain charges brought against him for conspiring against the government, affording aid and comfort to the enemy, inciting insurrection, disloyal practices, and violation of the usages of war. The commission convicted him and sentenced him to be hanged. His imprisonment was continued under this sentence at Indianapolis till the 2d day of June, 1865, when, a commutation having been made in the sentence by the president, General Hovey ordered the plaintiff to be re-

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

moved to the penitentiary of Ohio, at Columbus, in compliance with instructions from the war department, where he remained till the 10th of April, 1866, when he was liberated. In the meantime, on the 10th of May, 1865, the plaintiff had made application to this court for a writ of habeas corpus, upon which the opinions of the judges were divided, and the questions certified to the supreme court, under the act of congress of April 29th, 1802. That court, after elaborate argument and consideration, held that the military commission had no jurisdiction to try and sentence the petitioner, and ordered the writ to issue according to the prayer of the petitioner, and that he be discharged from custody. Ex parte Milligan, 4 Wall. [71 U. S.] 2. It was for these acts thus done by General Hovey as military commander, by other defendants as members of the military commission, and by others as having some agency in his arrest, trial and imprisonment, that the action was brought, although the plaintiff simply set them out as a wrongful arrest and imprisonment, without stating the reasons which influenced the defendants. The defendants pleaded: (1) not guilty; (2) that the arrest and imprisonment grew out of the plaintiff's participation in the offenses charged against him before the military commission; that he was guilty thereof, and that the defendants were acting as officers in the army of the United States, under the authority of the president, without malice, and with no more force than necessary; (3) that for all acts done prior to the 13th of March, 1866, the limitation of two years prescribed by the seventh section of the habeas corpus act of congress of March 3, 1863, applies, the suit having been brought on the 13th of March, 1868; and the defendants say as to the imprisonment after March 13, 1866, they are not guilty.

T. A. Hendricks, for plaintiff.

J. W. Gordon and Benjamin Harrison, for defendants.

DRUMMOND, Circuit Judge (charging jury). The agency of most of the defendants in the arrest and imprisonment of the plaintiff is not seriously controverted. The arrest was made on the order of General Hovey, and by him he was held for military trial. The defendants Spooner, Dehart, Bennett, Murray, and Williams, were members of the military commission that tried and convicted him, and it was in consequence of their action that he was still retained in prison. If they had acquitted him it is a fair inference he would have been released, unless, indeed, other charges were preferred against him. This being the case on the part of the plaintiff, we now proceed to consider the defense. However it may have been before the arrest and trial, there is no doubt that the acts of General Hovey and his brother officers, in the seizure, trial and sentence of the plaintiff, were ratified and approved by the executive

department of the government. The legislation of congress has also been to the same effect. Act March 3, 1863, § 4 (12 Stat. 756); Act May 11, 1866, § 1 (14 Stat. 46); Act March 2, 1867 (14 Stat. 432); 3 Davis' Supp. Ind. St. 570.

The first question, therefore, is whether this constitutes a good defense. The supreme court of the United States decided upon the facts then before it that the action of the military commission in the trial and sentence of the plaintiff was null and void. [Ex parte Milligan] 4 Wall. [71 U. S.] 2. The court also decided that in the trial and sentence the constitutional rights of the plaintiff were invaded; that is, the act done was prohibited by the constitution of the United States. A majority of the court held that even congress could not authorize the act. If an act is prohibited by the constitution, and it is beyond the power of congress to authorize it, then it may be said the wrong done by the act is not subject to complete indemnity by congress, because then the prohibition of the constitution to protect private rights would be without effect. Id. 136. As the minority of the judges of the supreme court in the Milligan Case held that the trial and sentence might have been legal if congress had authorized military commissions, then I think it is fairly to be inferred that in their opinion congress could give indemnity for the same, although the trial was illegal at the time for want of an act of congress. I have preferred to rule, for the purposes of this trial, that an act of congress would not be a complete justification if the military trial was forbidden by the constitution.

This question is undoubtedly of great importance, and it has been reserved for future consideration. It is for this reason that the second defense is placed on the ground that there was martial law, suspension of the privilege of the writ of habeas corpus, and war and military operations in Indiana at the time of arrest. Under the present ruling of the court, proof of this last averment is essential to the validity of the defense. In the case presented to the supreme court it was assumed that there was at the time no war in Indiana, and it was declared that no usage of war could sanction a military trial there for any offense of a citizen not connected with the military service. But in this case the defendants have been permitted to aver and give evidence touching a state of war before, at and after the arrest of the plaintiff. Under what condition of affairs would the law have given validity to the commission that tried the plaintiff? This question is answered by the supreme court of the United States in the case so often referred to. These are some of the principles stated by that court: "Martial law cannot arise from a threatened invasion. The necessity must be actual and present; the invasion real, such as effectually closes the courts and deposes the civil administration."

"There are occasions when martial law can be properly applied. If in foreign invasion or civil war the courts are actually closed, and it is impossible to administer criminal justice according to law, then, on the theatre of active military operations where war really prevails, there is a necessity to furnish a substitute for the civil authority thus overthrown. * * * As necessity creates the rule, so it limits its duration, for if this (military) government is continued after the courts are reinstated, it is a gross usurpation of power. Martial rule can never exist where the courts are open and in the proper and unobstructed exercise of their jurisdiction; it is also confined to the locality of actual war."

Does the evidence before the jury bring this case within the conditions named? We know judicially, and therefore it is proved, that the federal courts of Indiana were open during the time the events occurred which have given rise to this controversy. Cases, both civil and criminal, were tried, and rights of person and property determined. A part of the state had been invaded in July, 1863, but that had passed away. There were occasional disturbances, the draft was sometimes opposed, the arrest of deserters resisted, rendering necessary the aid of soldiers. A few were killed in these collisions, but the civil administration of the state was in full vigor. It was not impossible to administer criminal justice according to law in the federal courts. A single instance only is specified where military assistance was required to enforce the process of the federal court, and that was merely preventive. It is impossible to doubt that if the facts as established now had been before the supreme court of the United States in the Case of Milligan, the result would have been the same. It is claimed that there was a great conspiracy pervading the state, having for its end a revolution, civil and military, in the interest of the enemies of the government. But, in fact, a few only were arrested and tried before the military commission, and it cannot admit of question that the plaintiff could have been taken by civil officers before the courts, and there tried for any offenses of which he had been guilty.

I do not wish to withdraw from your consideration the facts on which you are to decide, but if the case of Ex parte Milligan, reported in 4 Wall. [supra], is to stand as the rule of his trial before the military commission and the test of its validity, then I am impelled to say that no fair construction of the evidence presented to you has changed that rule, or protected with the forms of constitutional law that which the supreme court then pronounced null and void.

It is insisted that the act of congress of March 3, 1863 (12 Stat. 755), in relation to the writ of habeas corpus, recognized the authority of the military to arrest and to hold the plaintiff in custody until a grand jury met, and that did not occur till May, 1865. If General Hovey and those whom he obeyed

had followed the directions of that act, it is probable no controversy would have arisen upon the subject. The act of 1863 intended that a man in the condition of Milligan, a citizen of the state, not connected with the land or naval service, should be tried by the civil courts; that his alleged offenses should be investigated by a grand jury, and, if indicted, that he should be tried before the civil courts of the United States, with a jury to settle disputed facts, and a judge to expound the law. But it is too clear for debate, that the act of congress of 1863 was not considered as ruling the case. Those who ordered and confirmed the trial of the plaintiff by military commission claimed and exercised the power as a law of the army above and beyond the authority of the civil courts. If it be conceded, therefore, that he could have been taken by a company of soldiers instead of by the process of a civil court, those who made the arrest should, in good faith, have submitted to the law of 1863, and brought the plaintiff before the proper court on the charges made against him. The military trial, sentence, and subsequent imprisonment of the plaintiff find, therefore, no justification in the act of 1863.

The third defense, which may have a great influence in the case, is the statute of limitations of 1863 (12 Stat. 757). The seventh section of that statute declares that no suit or prosecution, civil or criminal, shall be maintained for any arrest or imprisonment made or other trespasses or wrongs committed at any time during the Rebellion, by virtue or under color of any authority derived from or exercised by or under the president of the United States, or by or under any act of congress, unless the same shall be commenced within two years next after the arrest, imprisonment, trespass or wrongs complained of.

At the time this statute was passed we were engaged in a great civil war. In such a war, perhaps, more than any other, under the influence of the passions created by the conflict, and the zeal of even the officers and soldiers who combatted for the maintenance of the government, it was foreseen that private rights, both of person and property, might be invaded; that wrongs might be committed for which, under the constitution and laws, the person committing them might be called to answer before the courts of the country. If we concede that there might be wrongs for which there could not be absolute indemnity, still it was but an act of justice to those thus subject to prosecutions to declare that remedies should be sought for through the courts within a certain time, provided it were not so short as, in effect, to destroy the remedy itself. The acts for which actions were to be brought within a limited time were those done under the authority of the chief magistrate of the nation—the commander-in-chief of its armies. I cannot doubt, therefore, that it was competent for congress to enact that all such actions should be commenced

within a reasonable time after the wrong was committed. The limitation prescribed by congress was two years, thus giving ample opportunity for the enforcement of any rights created or protected by the constitution or laws. It has always been decided that this is a matter resting with the legislature, and the only question is whether the limitation is within the control of congress, this action having been originally brought in one of the courts of the state. But states might take different views of the subject, and in some, where rebellious sentiments were paramount, the legislatures might leave such actions against the agents of the government without limitation. There must, therefore, be an authority coextensive with the nation which could create a uniform rule, and to congress only is such power given from the nature of the case. Even if it be true that the states may be able, subject to certain qualifications, to create rules for their own courts, which is not here intended to be questioned, yet, in the absence of any such binding rules, the legislation of congress, in the cases named, must be a law to a state as well as to a federal court. I think, therefore, that the statute of limitation of 1863 is obligatory in this case.

The action was commenced on the 13th of March, 1868. Two years would go back to the 13th of March, 1866. The plaintiff was released on the 10th April, 1866, and whatever may be said of his ability to commence a suit prior to that time, afterwards his power was complete. He waited till the 13th of March, 1868. It is said that the imprisonment was one continued act, and consequently that two years not having passed from its termination to the commencement of the suit, the action included the whole term, notwithstanding a part of the imprisonment occurred more than two years before; but it seems to me that the act of congress was intended to say to any one who delayed his action it should be at his own risk. There is no saving in the statute, for imprisonment or any other cause. It was the design that whatever was done by way of suit should be done quickly, and not to leave officers and soldiers at a distant day to be harassed by litigation. In any event, therefore, the defendants would not be liable for any acts done prior to March 13, 1866. Are General Hovey and the officers of the military court responsible for any portion of the imprisonment in Ohio? The facts bearing on this part of the case are not disputed. The plaintiff, after the commutation of his sentence, and while the federal court and its grand jury were in session in this district, by order of General Hovey, was on the 2d of June, 1865, sent to the penitentiary of Ohio, at Columbus, and there received by the warden. General Hovey made this order pursuant to instructions from the president, and, therefore, can claim the same exemption as for previous action, and no more. The members of the military court had no further agency in his transfer and imprisonment in

Ohio than what grew out of the trial and sentence, and the only question is whether that was not the necessary and natural result of the sentence pronounced on the plaintiff. On the theory that the military court had jurisdiction of the case, the president could order the sentence to be carried into execution, or commute it. Whatever, therefore, was done to the plaintiff in Ohio was in consequence of his trial and conviction by the military commission; and if that fail as a justification to those who gave the instructions to General Hovey, it must also fail to those through whose action or instrumentality the transfer to Ohio was made.

The only remaining question, if the jury shall find a verdict for the plaintiff, is, what amount of compensation shall be allowed. That rests exclusively with the jury. At the same time a few remarks by the court on this point may not be out of place. It is conceded by the plaintiff's counsel that the damages should be only compensatory, and not exemplary or punitive.

The principal defendants were officers in the army, acting under the president of the United States and his military subordinates. The members of the military commission were detailed as such by their official superior. All were of a profession where obedience was exacted as a rule of their conduct. It was at a crisis when much alarm was felt by the public. For the purpose of showing the reasons for their action, evidence has been introduced by the defendants tending to prove that there was a conspiracy of some persons, the aim of which was aid and comfort to the rebels, and hostility to the government. There was in Indiana, in 1863, a secret society known as the "Sons of Liberty." There can be no doubt that some of the members of that society—how many does not appear—were engaged in a treasonable design against the government, and that their purpose was to involve the whole of the society, if possible; if not, then all whom they could influence in that design. The military authorities here at the time had knowledge of this scheme, and under the belief that it was indispensable to thwart it at once, arrested some of the supposed leaders, and among the rest the plaintiff. Under the convictions produced by this state of things the defendants arrested, tried and condemned the plaintiff upon the evidence before them. Whether the evidence or what might have been produced would have warranted his conviction before a civil court need not be decided. It is clear that the defendants were performing what they considered a military duty.

It should also be borne in mind that the conduct of the defendants in relation to the plaintiff was approved by those whose judgment and opinion they would regard with the greatest respect—the highest officers of the nation. All the circumstances should be regarded in weighing the acts of the defendants. If you should believe there is any evidence connecting the plaintiff with a conspiracy against the government, though it would not justify his trial by a military commission, yet it would undoubtedly affect your conclusions upon the question of damages; so, too, if you should believe the acts of the defendants were done without sufficient excuse, and the plaintiff was an innocent man.

As the court reviews the law and evidence the plaintiff can recover damages only for the imprisonment from the 13th March, 1866—for that he is entitled to compensation. That would include certainly any pecuniary loss thereby sustained, as well directly as indirectly. If you believe there is no evidence connecting the defendants, Zumro and Bratton, with the imprisonment of the plaintiff, then as to them you will find a verdict of not guilty.

It will be observed that the charge of the court has been rather an exposition of the law than a commentary on the facts, and that has necessarily been so. The material facts are not in controversy, and the question is, what is the law upon these facts? The facts in dispute the court leaves to you. The law you will take from the court. I commend the case to your careful, candid, and intelligent consideration.

The jury found a verdict for the plaintiff, with nominal damages.