Arlan (Bill) BRYANT

v.

Billy DONNELL and Jackie Donnell.

Euel SISCO

v.

Billy DONNELL and Jackie Donnell.

Civ. Nos. 1517, 1525.

United States District Court
W. D. Tennessee, E. D.

March 10, 1965.

Lucius E. Burch, Jr., Burch, Porter & Johnson, Memphis, Tenn., Ewing J. Harris, Bolivar, Tenn., for plaintiffs.

James H. Smith, Tiptonville, Tenn., Carmack Murchison, Jackson, Tenn., for defendants.

BAILEY BROWN, District Judge.

These are actions to recover damages for violation of plaintiffs' federal civil rights. Defendants have made motions to dismiss on the grounds that there is no jurisdiction over the subject matter and that the complaints fail to state claims for which relief can be granted. Since the facts relied upon in the two actions are closely related and raise substantially the same issues, we are disposing of the motions to dismiss in one memorandum decision.

The complaints allege that these actions arise under the laws of the United States and that the amount in controversy exceeds $10,000. There is no diversity of citizenship alleged. Neither complaint attempts or purports to state a claim under state law, and therefore we have no question relating to the doctrine of pendant jurisdiction.

The facts alleged in the complaints are in substance as follows:

Prior to September 19, 1964, plaintiff Bryant was employed by defendant Billy Donnell on his farm in Lake County, Tennessee for the purpose of making a crop on a share basis and for performing farm labor. Bryant, his wife and children lived in a house owned by Billy Donnell. The wife and eldest child also performed services on the farm. Bryant and his family were entirely dependent upon a store owned by Billy Donnell for their groceries and other necessaries, which were to be paid for by their labors and by charging against Bryant's share of the crop. Billy Donnell refused to furnish groceries and other necessaries sufficient to maintain Bryant and his family,, with the result that Bryant was forced to obtain employment elsewhere but left his wife and children behind to perform agricultural services for Billy Donnell. Bryant was later able to find accommodations for his family at the location of his job, decided to move the family, and so advised Billy Donnell. Bryant enlisted the help and use of the truck of plaintiff Sisco to move his family.

The defendants, Billy Donnell and Jackie Donnell, thereupon entered into a conspiracy to hold Bryant and his family in a condition of forced servitude. In furtherance of this conspiracy, defendants lay in wait at the house. While Bryant's furniture was being placed in the truck, defendants opened fire on the hood and radiator of the truck in close proximity to Bryant's family, putting them in fear of their lives. Further, and pursuant to this conspiracy, the defendants forcibly made a citizen's arrest and took Sisco into custody. Later they charged him with the crime of criminal trespass, causing him to be imprisoned, well knowing that Sisco had entered the premises with permission of Bryant who was in lawful possession thereof. Further, and pursuant to this conspiracy, defendants caused to be issued a warrant for the arrest of Bryant, charging him with criminal trespass, as a result of which he was placed in jail, when defendants well knew that Bryant was a lawful resident of the premises.

Bryant charges that defendants thereby violated the "peonage" statutes. Title 42, Sec. 1994, and Title 18, Sec. 1581, U.S.C. While Bryant does not expressly rely also on Title 42, Secs. 1983 and 1985 (3), U.S.C., it is clear from the memoranda furnished to the Court by counsel that Bryant does so rely and that defendants assume he so relies. Sisco relies on these same statutes.

To the extent that plaintiffs ground their claims on Title 42, Sec. 1994, and Title 18, Sec. 1581, their claims arise under the laws of the United States within the meaning of Title 28, Sec. 1331, U.S.C., because the claims under these statutes do not clearly appear to be "immaterial and made solely for the purpose of obtaining jurisdiction" and the claims are not "wholly insubstantial and frivolous." This Court therefore has jurisdiction. Bell v. Hood, 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939, 943 (1946). To the extent that plaintiffs ground their claims on Title 42, Secs. 1983 and 1985 (3), for the same reason there is jurisdiction under Title 28, Sec. 1331 and under Title 28, Sec. 1343(1) and (3), U.S.C.

Title 42, Sec. 1994 and Title 18, Sec. 1581 provide as follows:

*"Sec. 1994. Peonage abolished.*

"The holding of any person to service or labor under the system known as peonage is abolished and forever prohibited in any Territory or State of the United States; and all acts, laws, resolutions, orders, regulations, or usages of any Territory or State, which have heretofore established, maintained, or enforced, or by virtue of which any attempt shall hereafter be made to establish, maintain, or enforce, directly or indirectly, the voluntary or involuntary service or labor of any persons as peons, in liquidation of any debt or obligation, or otherwise, are declared null and void."

*"Sec. 1581. Peonage: obstructing enforcement*

"(a) Whoever holds or returns any person to a condition of peonage, or arrests any person with the intent of placing him in or returning him to a condition of peonage, shall be fined not more than $5,000 or imprisoned not more than five years, or both."

It will be noted that neither of these provisions expressly creates a civil cause of action for damages. It follows, defendants contend, that plaintiffs cannot ground their claims on these provisions. Plaintiffs contend, however, that these provisions impliedly create a civil cause of action.

The question whether a civil cause of action is impliedly created by a statutory enactment is dealt with in the Restatement, Torts, Secs. 286 to 288. Secs. 286 and 287, which are applicable here, provide as follows: .

*"Sec. 286. Violations Creating Civil Liability.*

"The violation of a legislative enactment by doing a prohibited act, or by failing to do a required act,

makes the actor liable for an invasion of an interest of another if:

"(a) the intent of the enactment is exclusively or in part to protect an interest of the other as an individual; and

"(b) the interest invaded is one which the enactment is intended to protect; and

"(c) where the enactment is intended to protect an interest from a particular hazard, the invasion of the interests results from that hazard; and,

"(d) the violation is a legal cause of the invasion, and the other has not so conducted himself as to disable himself from maintaining an action."

*"Sec. 287. Effect of Provision for Penalty.*

"The existence in a legislative enactment of a provision for the imposition of a penalty for doing a prohibited act or failing to do a required act is immaterial in determining whether the actor is subject to liability for an invasion of the interest of another; * * *."

In Reitmeister v. Reitmeister, 162 F.2d 691 (C.A.2, 1947), Judge Learned Hand, citing the Restatement, said at page 694:

"The first questions are whether the Communications Act of 1934, 47 U.S. C.A. § 151 et seq., imposes a civil, as well as a criminal, liability upon anyone who 'publishes' a telephone message, and whether, if so, the District Court had jurisdiction over the action. Although the Act does not expressly create any civil liability, we can see no reason why the situation is not within the doctrine which, in the absence of contrary implications, construes a criminal statute, enacted for the protection of a specified class, as creating a civil right in members of the class, although the only express sanctions are criminal."

See also, in this connection, O'Dell v. Humble Oil & Refining Co., 201 F.2d 123, 127 (C.A.10, 1953), cert. denied 345 U.S. 941, 73 S.Ct. 833, 97 L.Ed. 1367 (1953), and Goldstein v. Groesbeck, 142 F.2d 422, 426 (C.A.2, 1944), cert. denied 323 U.S. 737, 65 S.Ct. 36, 89 L.Ed. 590 (1944).

Peonage has been defined by the Supreme Court in the following language in Pollock v. Williams, 322 U.S. 4, 9, 64 S.Ct. 792, 795, 88 L.Ed. 1095, 1099 (1944) quoting Clyatt v. U. S., 197 U.S. 207, 215, 25 S.Ct. 429, 430, 49 L.Ed. 726, 729 (1905):

"It may be defined as a status or condition of compulsory service, based upon the indebtedness of the peon to the master. *The basal fact is indebtedness.* * * * Peonage is sometimes classified as voluntary or involuntary; but this implies simply a difference in the mode of origin, but none in the character of the servitude. The one exists where the debtor voluntarily contracts to enter the service of his creditor. The other is forced upon the debtor by some provision of law. * * * A clear distinction exists between peonage and the voluntary performance of labor or rendering of services in payment of a debt. In the latter case the debtor, though contracting to pay his indebtedness by labor or service, and subject, like any other contractor, to an action for damages for breach of that contract, can elect at any time to break it, and no law or force compels performance or a continuance of the service." (Emphasis ours.)

Applying the standards of these authorities, Sisco has not alleged a claim under the peonage statutes because his interest alleged to be invaded is not the interest these statutes are aimed to protect. It is not alleged that defendants held or retained Sisco in peonage, or arrested him for the purpose of placing *him* in or returning *him* to peonage, or conspired to do so. Accordingly, Sisco has no claim under the peonage

statutes. On the other hand, it is alleged that defendants have invaded Bryant's interest in being free from peonage. Actually, Bryant's complaint does not specifically allege that there was an existing indebtedness and that defendants conspired to hold him in forced labor to discharge the debt. But the factual allegations together with the allegation that defendants violated the peonage statutes are sufficient in this respect on the motion to dismiss Bryant's claim. 1A Barron & Holtzoff (Wright Rev.), Sec. 255 and 2 Moore's Federal Practice, Sec. 8.13.

It will be noted that Title 18, Sec. 1581 only makes it a crime (1) to hold or return any person to a condition of peonage or (2) to arrest any person with the intention of placing him in or returning him to a condition of peonage. Bryant does not allege that he was ever held in or returned to "a condition of peonage" or that the defendants themselves arrested him for that purpose.

Bryant's complaint does allege that defendants *caused* him to be arrested by a law officer for that purpose. We believe that this criminal statute should not be construed as meaning that the crime is committed by *causing* an arrest for this wrongful purpose. This criminal statute should be construed narrowly. U. S. v. Shackney, 333 F.2d 475, 487 (C.A.2, 1964). Nor is Bryant's complaint aided in this respect by Title 18, Sec. 2, U S.C., which reads as follows:

"§ 2. *Principals*

"(a) Whoever commits an offense against the United States, or aids, abets, counsels, commands, induces, or procures its commission, is a principal.

"(b) Whoever causes an act to be done, which if directly performed by him would be an offense against the United States, is also a principal and punishable as such."

It would be necessary, for this provision to be applicable, that Bryant allege that the law officer, in making the arrest of Bryant, also violated Sec. 1581.

Bryant's complaint also alleges that the defendants conspired to hold him in a condition of peonage and did overt acts in furtherance of the conspiracy. These conspiracy allegations raise the question whether a violation of criminal conspiracy statutes can be the bases of a civil cause of action for damages. In addition to the general criminal conspiracy statute (Title 18, Sec. 371, U.S.C.) there is a Civil Rights criminal conspiracy statute (Title 18, Sec. 241, U.S.C.) which provides in part as follows:

"*Sec. 241. Conspiracy against rights of citizens*

"If two or more persons conspire to injure, oppress, threaten, or intimidate any citizen in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same; or

\*    \*    \*    \*    \*    \*

"They shall be fined not more than $5,000 or imprisoned not more than ten years, or both."

We do not believe that these criminal conspiracy statutes can be construed to create a civil cause of action. While the general conspiracy statute (Sec. 371) requires an overt act, the overt act may or may not in any way invade the interest of the person towards whom the conspiracy is directed. Sec. 241 does not even require an overt act. In this connection, it should be noted that the Civil Rights conspiracy statute which does expressly create a civil cause of action (Title 42, Sec. 1985(3), U.S.C., discussed hereinafter in another context) applies only where the overt act causes injury.

We now consider a Civil Rights statute which expressly creates a civil action for damages. This is Title 42, Sec. 1983, U.S.C. As stated, both plaintiffs rely on this statute, which provides as follows:

"*Sec. 1983: Civil Action for Deprivation of Rights.*

"Every person who, under color of any statute, ordinance, regulation,

custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

Sisco alleges that defendants, knowing that they were acting illegally and wrongfully, fired into his truck, made a citizen's arrest of him, and charged him with criminal trespass, causing him to be imprisoned. Bryant only alleges that defendants similarly caused him to be charged with criminal trespass, to be arrested and to be jailed. Plaintiffs do not allege that defendants acted, or purported to act, as public officers. They contend in their argument that defendants have under color of law deprived them of their Fourteenth Amendment right to due process of law, and that therefore they have a claim under Sec. 1983.

■ Rights created by the Fourteenth Amendment are protected only against state action. Collins v. Hardyman, 341 U.S. 651, 658, 71 S.Ct. 937, 95 L.Ed. 1253, 1258 (1951). Sec. 1983 in terms creates a cause of action only against those acting under "color of law." It follows that Sisco and Bryant have a claim under Sec. 1983 if, and only if, the acts done are alleged to be done under color of law and amount to state action. It may be that these are identical questions. Monroe v. Pape, 365 U.S. 167, 171, 81 S.Ct. 473, 5 L.Ed.2d 492, 496 (1961).

In connection with the citizen's arrest, Sisco relies, in making his color of law argument, on Tennessee Code Annotated, Title 40, Sec. 816 which reads:

"*816. Grounds for Arrest by Private Persons.*

"A private person may arrest another: (1) For a public offense committed in his presence; (2) when the person arrested has committed a felony, although not in his presence; (3) when a felony has been committed, and he has reasonable cause to believe that the person arrested committed it."

It is true that this statute has been held to be at variance with the common law as to citizen arrests and that it covers the whole subject of arrests without a warrant by a private person. McCaslin v. McCord, 116 Tenn. 690, 706, 94 S.W. 79 (1906). However, even if the common law of arrest were in effect in Tennessee, a private person could lawfully make an arrest only because he was authorized under the law of Tennessee. Thus, for purposes of determining whether the arrest of Sisco was under color of law, we think it makes no difference whether defendants were acting under authority of a state statute or state common law.

■ We conclude that a person making an arrest is acting under color of law if, and perhaps only if, he is in fact acting as a public officer. In Monroe v. Pape, supra, the Court said (365 U.S. at p. 171, 81 S.Ct. at p. 476, 5 L.Ed.2d at p. 497):

"There can be no doubt at least since Ex parte Virginia, 100 U.S. 339, 346–347, 25 L.Ed. 676 [679], that Congress has the power to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it." (Citation omitted.)

In Williams v. United States, 179 F.2d 656 (C.A.5, 1950), wherein the Court was dealing with a "color of law" requirement in a criminal statute, it said, with respect to the defendant Williams, at p. 661:

"We are of the opinion that in the absence of any showing whatsoever that the appellant made known to the victims that the inquisition was personal or unofficial, rather than under the law, and in view of the possession of a special policeman's card by Williams, his flashing of a badge as a symbol of authority, his

arrest of one of the victims, together with the presence of the policeman, Ford, during all of the atrocities in the paint shack, the jury was justified in concluding that the appellant was either acting under color of law or pretending so to act."

The Supreme Court approved this holding in Williams v. United States, 341 U.S. 97, 71 S.Ct. 576, 95 L.Ed. 774 (1951). The language quoted may be construed to indicate that the "color of law" requirement is met if the person whose conduct is being considered pretended to act as a public officer even though he was not in fact so acting. The very recent decision in Griffin v. State of Maryland, 378 U.S. 130, 84 S.Ct. 1770, 12 L.Ed. 2d 754 (1964), holds that an arrest by a special deputy sheriff is state action and strongly implies that an ordinary citizen's arrest is not state action.

■■■ Accordingly, neither Sisco nor Bryant states a claim under Sec. 1983 because their complaints affirmatively allege that defendants were acting and purporting to act as private citizens.

Finally, we consider the claims of Bryant and Sisco under Title 42, Sec. 1985(3), which reads in part as follows:

"*1985(3). Depriving Persons of Rights or Privileges.*

"If two or more persons in any State or Territory conspire or go * * * on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; * * * in any case of conspiracy set forth in this section, if one or more persons engage therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by

such injury or deprivation, against any one or more of the conspirators."

The bases of the claims of Bryant and Sisco under Sec. 1985(3) are the allegations that defendants conspired to deprive them of the rights protected by that provision and in furtherance of the conspiracy did the acts which are the bases for their claims under Sec. 1983.

■■■ We believe that plaintiffs' claims under Sec. 1985(3) fail under the controlling case of Collins v. Hardyman, 341 U.S. 651, 71 S.Ct. 937, 95 L.Ed. 1253 (1951). In that case, plaintiffs sought damages under Sec. 1985(3), alleging that the defendants wrongfully broke up a meeting which they had called to discuss action contemplated by Congress and to petition Congress with respect to that action. In that decision the Court passed the issue as to whether Sec. 1985(3) applies only as to acts under color of law (341 U.S. at p. 659, 71 S.Ct. at p. 940 and 95 L.Ed. at p. 1258). Instead, it placed its decision that plaintiffs had no claim under Sec. 1985(3) on the ground that they were not deprived of *equal* protection of the law or *equal* privileges and immunities. The Court said (at p. 661 of 341 U.S. at p. 942 of 71 S.Ct. and at p. 1259 of 95 L.Ed.), in this connection:

"What we have here is not a conspiracy to affect in any way these plaintiffs' equality of protection by the law, or their equality of privileges and immunities under the law. There is not the slightest allegation that defendants were conscious of or trying to influence the law, or were endeavoring to obstruct or interfere with it. The only inequality suggested *is that the defendants broke up plaintiffs' meeting and did not break up meetings of others with whose sentiments they agreed. To be sure, this is not equal injury,* but it is no more a deprivation of 'equal protection' or of 'equal privileges and immunities' than it would be for one to assault one neighbor without assaulting them all, or to libel some persons without mention

of others. Such private discrimination is not inequality before the law unless there is some manipulation of the law or its agencies to give sanction or sanctuary for doing so. Plaintiffs' rights were certainly invaded, disregarded and lawlessly violated, but neither their rights nor their equality of rights under the law have been, or were intended to be, denied or impaired."

The Court went on to say that a conspiracy consisting of private individuals for the purpose of depriving persons of protection of the laws and privileges and immunities might be so massive as to come within the ambit of Sec. 1985(3) but that no such conspiracy was alleged. Here there is no allegation of a massive conspiracy. It is true that the Court stated, in the quoted part of the opinion, that a claim may exist under Sec. 1985(3) if " * * * there is some manipulation of the law or its agencies to give sanction or sanctuary * * *." We construe this language to mean that a claim may exist if the conspirators have hindered the law enforcement officers in carrying out their duties, or have enlisted the officers in the conspiracy. We so construe this language because the Court then said:

> "Their rights *under the laws* and to *protection of the laws* remain untouched and equal to the rights of every other Californian, and may be vindicated in the same way and with the same effect as those of any other citizen who suffers violence at the hands of a mob."

Here there is no allegation that defendants have hindered or conspired with the officers. Plaintiffs' rights may be vindicated in the same way and to the same effect as any other citizen of Tennessee.

 There are alternative bases for our holding that plaintiffs have not alleged a claim under Sec. 1985(3). In Hoffman v. Halden, 268 F.2d 280, 291 (C.A.9, 1959) it was held that this subsection is applicable only when the acts done are under color of law even though it does not expressly so provide. We have already indicated that the acts alleged here were not under color of law. Moreover, Snowden v. Hughes, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1943) and the Hoffman case both hold that Sec. 1985(3) is applicable only when there is an intentional discrimination. While we are not sure as to precisely what those courts meant in stating that requirement, a comparison of the complaints in those cases with the complaints here clearly shows that we have no such allegation.

Since plaintiffs have stated no claim for relief under the applicable federal statutes, it results that the motions to dismiss should be granted.

Judgment will enter accordingly.