Agnes LAMONT; Gladys Bissonette; Ellen Moves Camp; Eugene Hawk; Marvin Ghost Bear; Edgar Bear Runner; Oscar Bear Runner; Severt Young Bear; Rachel White Dress; Helen Red Feather; Eddie White Dress; Vicki Little Moon; Madonna Gilbert; Lorelei Means, and Carla Blakey, Plaintiffs

v.

Alexander HAIG; Wayne Colburn; Richard Kleindienst; Joseph T. Sneed; Charles D. Ablard; Joseph H. Trimbach; Ralph E. Erickson; Harlington Wood, Jr.; Kenneth Belieu; Rolland Gleszer; Edmund Edwards; John Hay; and Volney F. Warner, Defendants.

Civ. A. No. 81–5048.

United States District Court,
D. South Dakota, W. D.

May 24, 1982.

Terrance A. Sidley, Alexandria, Va., James Leach, Rapid City, S. D., Kenneth E. Tilsen, St. Paul, Minn., David Engdahl, Tacoma, Wash., for plaintiffs.

Stanley Dalton Wright, Brook Hedge, and Ann M. Gulyassy, Dept. of Justice, Civ. Div., Washington, D. C., for defendants.

## MEMORANDUM OPINION

DONALD J. PORTER, District Judge.

### CASE SUMMARY

Defendants moved to dismiss this case on the grounds that there is a lack of personal jurisdiction over defendants, that the allegations of the complaint are vague, conclusory, and insufficient, and that the plaintiffs have failed to state a claim as to either their claim for violations of their constitutional rights or their claim for violations of several federal criminal statutes, including the Posse Comitatus Act, 18 U.S.C. § 1385. After due consideration of the briefs and argument of the parties, the Court must find that it does presently lack jurisdiction over all but one of the defendants, but that plaintiffs will be given an opportunity to make proper service. The Court also finds that the complaint does not state a cause of action under the criminal statutes urged. The Court does find, however, that a constitutional cause of action is stated, but that plaintiffs will be required to amend their complaint because of the vague and conclusory nature of their allegations.

### BACKGROUND

Six years after its filing in the District of Columbia, see Lamont v. Haig, 590 F.2d 1124 (D.C.Cir.1978), this action was transferred in 1981 to the District of South Dakota under 28 U.S.C. § 1406(a). At that time, defendants renewed their motion for judgment on the pleadings, raising a number of arguments which had been urged at various times in the course of the litigation but were never decided.

The complaint arises from the Indian occupation of Wounded Knee, South Dakota, in 1973. Plaintiffs are all apparently residents of Wounded Knee who were, they allege, kept from their homes in that village or forcibly confined in the village while it was surrounded by federal law enforcement

officers. The principal claim of plaintiffs is that the substantial use of military personnel in support of the government activity, which was, plaintiffs claim, engineered by defendants, violated an implied constitutional right of plaintiffs to be free from the use of the military to enforce civil laws. Plaintiffs also allege that they are entitled to sue for damages for violations of 18 U.S.C. § 1385, which prohibits the use of the military "as a posse comitatus, or otherwise to execute the law." [1]

## DISCUSSION

### I.

The initial grounds for dismissal urged by defendants is that this Court lacks personal jurisdiction over all defendants, except for defendant Ablard, who was personally served in the District of Columbia and about whom there is apparently no dispute. Defendants' contention is two-fold, relating as it does to claims that the service of process on certain defendants of the original complaint was insufficient under Rule 4, as well as claims that service purporting to be based on the District of Columbia long-arm statute was invalid. The Court finds considerable merit to these claims, and must rule that, except for Ablard, plaintiffs have failed to make proper service on defendants.

*Service Under the District of Columbia Long-Arm Statute.*

Plaintiffs rely on the provisions of the District of Columbia Code §§ 13–422, 13–423(a)(1), as the basis for their authority to serve the original complaint on defendants Warner, Trimbach, Erickson and Wood. (Plaintiffs also contend that their failure to serve defendants Kleindienst and Sneed with the original complaint was cured by service of the amended complaint on these defendants under these Code sections). Plaintiffs further rely on these statutes for their service on all defendants, except Ablard, of the amended complaint.

Under Rule 4(f), service beyond the state in which the District Court is located can be made only when "authorized by a statute of the United States or by these rules. "Rule 4(e) allows for out-of-state service [w]henever a statute or rule of court of the state in which the district court is held [so] provides." The particular sections of the District of Columbia jurisdictional statutes upon which plaintiffs rely are:

§ 13–422. A District of Columbia court may exercise personal jurisdiction over a person domiciled in, organized under the laws of, or maintaining his or its principal place of business in, the District of Columbia as to any claim for relief.

§ 13–423. (a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's—

(1) transacting any business in the District of Columbia;

■ As to § 13–422, plaintiffs argue that the "critical time" for the purposes of the statute is the time when the acts giving rise to the claim took place, not when the process is actually served. In other words, plaintiffs claim, because ten of the defendants were either domiciled in or maintained their principal place of business in the District of Columbia in 1973, they were still subject to the jurisdiction of the courts there in 1975 when the complaint was filed, even though they had left the District of Columbia by that time. Plaintiffs cite no cases in support of this interpretation, and the statute itself is phrased only in the present tense: the court "may *exercise* personal jurisdiction over a person domiciled in the District" (emphasis supplied). This would appear to mean nothing more than the simple assertion that the District can exercise jurisdiction over its citizens even when they are temporarily out of the District, and indicates that the *exercise*, i.e., service of process, is to take place over

---

1. Some exploration of § 1385 was done in several of the criminal cases arising from the Wounded Knee incident. *See United States v. McArthur*, 419 F.Supp. 186 (D.N.D.1976); *Unit-* ed States v. Red Feather, 392 F.Supp. 916 (D.S. D.1975); *United States v. Banks*, 383 F.Supp. 368 (D.S.D.1974); *United States v. Jaramillo*, 380 F.Supp. 1375 (D.Neb.1974).

persons *then* domiciled in the District. *Securities & Exchange Commission v. Gilbert,* 82 F.R.D. 723, 726 (S.D.N.Y.1979) ("jurisdiction attached only when a defendant is properly served with the summons and complaint in an action.") If the drafters of § 13–422 had meant that the District of Columbia courts could exercise jurisdiction over all persons who were now and had been in the past domiciled in the District, an extraordinarily broad assertion of jurisdiction of questionable validity under due process, the language providing for such an assertion would have been inserted into the statute. As these statutes are now worded, the Court interprets them to mean that the only means of gaining jurisdiction over persons not now domiciled in the District must be by way of § 13–423.

■ Plaintiffs' reliance on § 13–423(a)(1) is also misplaced. It may be true that the activities of many of defendants in the District of Columbia amounted to the "transacting of business" with respect to the acts alleged in the complaint, and that a claim of personal jurisdiction could otherwise be made under this section, but this statute has been so construed by the District of Columbia courts as to render it inapplicable to this fact situation. Though cited by neither plaintiffs nor defendants, the case of *Mandelkorn v. Patrick,* 359 F.Supp. 692 (D.D.C.1973), considered a claim of personal jurisdiction under § 13–423(a)(1) and another sub-section of that statute. The court expressly held that "[u]nder the District of

Columbia 'long-arm' provisions above quoted, *both the act and the effect, or injury, must take place in the District.*" 359 F.Supp. at 695 (emphasis supplied). This Court might not have reached the same construction of the statute had it been free to consider the section without the holding in *Mandelkorn,* but it must be assumed that the District of Columbia courts possess greater expertise in the interpretation of their statutes, and this Court will accordingly follow *Mandelkorn.* Since it is obvious that the injuries plaintiffs are alleged to have suffered as a result of defendants' acts took place in Wounded Knee, South Dakota, any assertion of personal jurisdiction under § 13–423(a)(1) must be rejected.

*Service on Military Defendants under 32 C.F.R. § 516.1(e)(2).*

■ Plaintiffs were unable to obtain direct personal service upon defendants Gleszer, Edwards, Hay and Haig, who were all either active or retired military personnel at the time the original complaint was filed in 1975. Plaintiffs instead served certain individuals in the military in Washington, D. C., contending that these were persons "authorized ... by law to receive service of process", Rule 4(d)(1), for defendants Gleszer, Edwards, Hay and Haig. The provisions of law on which plaintiffs rely for this appointment is 32 C.F.R. § 516.-1(e)(2), the pertinent parts of which are set forth in the margin.[2]

---

2. 32 C.F.R. § 516.1(e)

(2) Civil process.
  (i) The service of process is not a function of the Department of the Army or of its military personnel or civilian employees in their official capacity, except when required by treaty or international agreement. It is the policy of the Department of the Army, however, to assist civil officials in the service of process as provided in paragraphs (e)(2)(iii) and (iv) of this section.
  (ii) Commanders and other Army officials will not prevent or evade the service of process in legal actions brought against the United States or themselves concerning their official duties. If acceptance of service of process would interfere with the performance of his military duties, a commander or other

official may designate a representative to accept service in his stead.
  (iii) Service of civil process within the United States, its territories and possessions is as follows:
    (a) Process of Federal Courts. Service of process is accomplished in accordance with the rules of the Federal court concerned (38 U.S.C. appendix). Installation commanders may impose reasonable restrictions upon persons who enter their installations to serve the process.
    (b) Process of State courts in areas of exclusive Federal jurisdiction not subject to the right to serve process.
  Commanders or other Army officials in charge will bring the matter to the attention of the individual requested to be served and will determine whether he wishes to accept service voluntarily in accordance with the

A close reading of these regulations does not support plaintiff's argument that these authorize service on a member of the military other than on defendants themselves. First, sub-section (e)(2)(iii)(a), which explicitly relates to the process of *federal* courts, appears to provide only for allowing persons to enter a military installation to make service under Federal court rules. Nothing in this subsection establishes a procedure in which one officer of the military could accept service for another officer. Second, even accepting plaintiff's argument that subsections (3)(2)(iii)(b) & (c) are applicable here, relating as they do to service of *state* courts, all that either of the subsections provide is that an Army official will "bring the matter to the attention of the individual requested to be served and will determine whether he wishes to accept service voluntarily." The regulation does not provide that the army official will actually take the summons and complaint and serve it on the defendant; such an interpretation would, in fact, conflict with the general language of (e)(2)(i), that "service of process is not a function of the Department of the Army or of its military personnel or civilian employees." Subsections (e)(2)(iii)(b) & (c) appear to merely set forth a procedure whereby military personnel can be made available for process, not that certain officers themselves will take on the function of process servers. Finally, subsection (e)(2)(ii) provides that "a commander or other official *may* designate a representative to accept service in his stead" (emphasis supplied). Plaintiffs have produced nothing beyond the bare language of this regulation and generalized references to "common practice" in their brief to indicate that any of the defendants here designated the officers actually served as their "representatives to accept service." The Court must find, then, that plaintiffs failed to comply with Rule 4 in their service of these defendants, and that Gleszer, Edwards, Hay and Haig have not yet been brought before this Court.

*Service on Defendants' Secretaries.*

■ Service of the original complaint on defendants Colburn and Belieu was purported to have been effected on their secretaries at their places of business in Washington, D. C. Both defendants have filed affidavits, Belieu stating that his secretary had not "been authorized or appointed by me to accept or receive service of process in my behalf", and Colburn stating that he had not authorized his secretary "to accept service of process on my behalf when I have been sued in my personal capacity."

As with the preceding section of this opinion, the governing law is Rule 4(d)(1):

Service shall be made

(1) Upon an individual other than an infant or an incompetent person, by delivering a copy of the summons and of the complaint to him personally or by leaving

laws of the State issuing the process. Judge advocates or other competent officials will inform the individual of the legal effect of voluntary acceptance of service. If the individual does not desire to accept service, the party requesting such service will be notified and will be informed that the nature of the jurisdiction precluded service by State authorities on the military installation.

(c) Process of State courts in areas of exclusive Federal jurisdiction in which the right to service process is reserved by, or granted to, the State or States, in areas of concurrent jurisdiction, and in areas in which the United States has only a proprietorial interest.

If Army officials are asked to serve process, they may proceed as in paragraph (e)(2)(iii)(b) of this section. If the individual declines to accept service, the requesting party will be so notified and will be informed that he may proceed through authorities authorized to serve process by the applicable State law. Civil officials authorized by applicable State law will be permitted, upon proper application, to enter areas subject to the right to serve process for the purpose of making service. Commanders or other Army officials in charge will assist the civil officials by making military personnel or civilian employees available for service of process, subject to reasonable limitations. In addition, civil officials may enter areas subject to the right to serve process for the purpose of levy on and the subsequent sale of personal property of personnel residing thereon, subject to reasonable limitations. This authority does not extend, however, to the levy on or the sale of personal property essential to or proper for the use of military personnel or civilian employees in the performance of their official duties.

copies thereof at his dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process.

Defendants Colburn and Belieu were not personally served. "Clearly, leaving process at defendants' place of employment does not qualify under the dwelling house or place of abode method." *Gipson v. Township of Bass River*, 82 F.R.D. 122, 125 (D.N.J.1979). As to service on an agent, the "cases dealing with agency by appointment indicate that an actual appointment for the specific purpose of receiving process normally is expected ... protestations by an agent that he has authority to receive process or the fact that an agent actually accepts process is not enough to bind defendant; there must be evidence that defendant himself intended to confer such authority upon the agent." 4 Wright & Miller, *Federal Practice and Procedure*, 371–72 (1969). Plaintiffs have presented no evidence that defendants Colburn and Belieu intended to appoint their secretaries to receive service

in a case such as this [3], and in the absence of such evidence, it must be found that neither Colburn nor Belieu have been brought before this Court.

It is the finding of the Court, then, that personal service has not yet been effectively made on defendants Gleszer, Edwards, Hay, Warner, Haig, Colburn, Kleindienst, Sneed, Trimbach, Erickson, Wood and Belieu. Defendants urge that the case against them be therefore dismissed. "However, when presented with insufficient service of process ... the court has broad discretion to dismiss the action *or* to retain the case but quash the service that has been made on the defendant.... The latter course is the one this court will follow, since there is a reasonable prospect that plaintiff ultimately will be able to serve defendants properly." *Gipson v. Township of Bass River*, 82 F.R.D. 122, 126 (D.N.J.1979). (Emphasis in original) Plaintiffs are therefore granted sixty days from the date of the filing of their additional amended complaint, as provided in a later section of this opinion, to make service on these defendants under the South Dakota long-arm statute, SDCL 15–7–1 *et seq.*[4]

**3.** Plaintiffs seize upon the phrase in Colburn's affidavit that his secretary was not authorized to accept process in suits against Colburn in his "personal capacity", and imply from this that she was his agent to accept service in Colburn's official capacity. Plaintiffs then seek to avoid the problem that this case is brought against defendants as individuals by insisting that, while individual liability is sought, the case relates to unlawful acts done in Colburn's official capacity. Rule 4, however, clearly distinguishes between service on an individual and service on United States officers in their official capacity, *compare* Rule 4(d)(1) with Rule 4(d)(5), and it is evident that an officer could designate his secretary as his agent to receive service in the one type of suit while giving her no authorization to accept service in the other type of suit. *See Micklus v. Carlson*, 632 F.2d 227, 240 (3rd Cir. 1980) ("Where money damages are sought from a public official in his individual capacity, service ... under Rule 4(d)(5) is insufficient ... the plaintiff must proceed under the terms of Rule 4(d)(1) and effect personal service.")

**4.** The Court must also deny defendants' motion to dismiss on the ground that because of the lack of sufficient service, this action is now barred by the statute of limitations. The case

was properly filed as a federal cause of action on February 27, 1975 in the District of Columbia. Under the prevailing interpretations, the Federal Rules of Civil Procedure do

> not intend that the mere lapse of time between filing the complaint and service of process affects the validity of the service or causes the action to abate. Under the Rules, so long as the action pends, process Remains [sic] alive until it is effectively served ... *If process is served on the wrong person, or otherwise improperly served, the action does not die; rather a new summons should be issued and good service attempted.*

2 Moore's Federal Practice 4–76–4–78 (2d ed. 1981) (emphasis supplied). *See also Moore Co. of Sikeston, Mo. v. Sid Richardson Carbon & Gas Co.*, 347 F.2d 921 (8th Cir. 1965); *Tripplett v. Azordean*, 478 F.Supp. 872 (N.D.Ia.1977). The Court must, of course, look to the most analogous state statute to fix the period of limitations. While it is unclear whether this statute is to be adopted from the laws of the District of Columbia or South Dakota, it is evident that under the laws of either forum the case was timely filed. The first of defendants' acts alleged in the complaint took place on February 28, 1973, and continued into March, 1973. As noted before, the case was filed on

## II.

Plaintiffs have alleged causes of action under four federal criminal statutes, 18 U.S.C. §§ 2, 241, 371 and 1385. The great weight of authority is that neither § 241 nor § 371 provide private causes of action. "Section . . . 241 . . . of Title 18 provide[s] criminal remedies for the violation of certain constitutional rights, not a private cause of action." *Sauls v. Bristol-Myers Co.*, 462 F.Supp. 887, 889 (S.D.N.Y.1978). "With regard to the alleged violations of 18 U.S.C. § 241 . . . [and] 371 . . . plaintiff has failed to cite, and the court has been unable to locate, any authority which would support implying a civil cause of action for violations of these provisions. To the contrary, the case law indicates that violation of these statutes does not give rise to a civil cause of action." *Fiorino v. Turner*, 476 F.Supp. 962, 963 (D.Mass.1979).

The two sections of Title 18, U.S.C., relied upon by the plaintiff relate to the criminal offenses of mail fraud and conspiracy to commit mail fraud.

These provisions provide absolutely no jurisdictional basis for the plaintiff's claim because the prosecution of those criminal offenses has been entrusted solely to the federal government. Private litigants cannot sue to redress the offenses defined in Sections 371 and 1341 of Title 18 U.S.C.

*Milburn v. Blackfrica Promotions, Inc.*, 392 F.Supp. 434, 435 (S.D.N.Y.1974). *See also Aldabe v. Aldabe*, 616 F.2d 1089 (9th Cir. 1980); *Means v. Wilson*, 383 F.Supp. 378 (D.S.D.1974), aff'd in part *and rev'd on other grounds*, 522 F.2d 833 (8th Cir. 1975), *cert. den.* 424 U.S. 958, 96 S.Ct. 1436, 47 L.Ed.2d 364 (1976); *Bryant v. Donnell*, 239 F.Supp. 681 (D.Tenn.1965).

February 27, 1975. Thus, even if the shortest of the limitation periods cited to the Court, SDCL 15–2–15(1) were applied, this case would still have been filed in time.

Some cases indicate that "due diligence" in service is also required to toll the statute. This position has been expressly rejected in this Circuit in *Moore, supra.* Even if it were necessary to show diligence of service, however, the Court is satisfied that plaintiffs' efforts to make service following the filing of the original complaint were sufficient to meet this requirement.

The Court has not located any such authority for 18 U.S.C. § 2 or the Posse Comitatus Act, 18 U.S.C. § 1385, on the latter of which plaintiffs place their primary reliance. The Court must then proceed to consider these statutes under the standards in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975) and *Touche Ross & Co. v. Redington*, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979). A court's task is "limited solely to determining whether Congress intended to create [a] private right of action", *Touche Ross*, 442 U.S. at 568, 99 S.Ct. at 2485, in enacting the statutes. As in *Cort v. Ash* :

Clearly, provision of a criminal penalty does not necessarily *preclude* implication of a private cause of action for damages. . . . However, in [cases in which a private cause of action was found], there was at least a statutory basis for inferring that a civil cause of action of some sort lay in favor of someone. Here, there was nothing more than a bare criminal statute, with absolutely no indication that civil enforcement of any kind was available to anyone.

422 U.S. at 79–80, 95 S.Ct. at 2088–2089.

Sections 2 and 1385 are in fact bare criminal statutes, showing not the slightest indication of any legislative intent to create a private cause of action. No case appears to have ever discussed the possibility of private causes of action under these sections, let alone make a finding that such a cause of action did exist. Plaintiffs briefed the legislative history of § 1385 at length, but were unable to produce any evidence of intent to create a private cause of action; [5] plaintiffs have failed entirely to show any

5. Plaintiffs primarily seek to evade this point with an argument that Congress did not intend § 1385 to abrogate a "traditional remedy in civil damages available through personal action brought by the person or persons alleging injury from prohibited use of the military." As the succeeding portion of this opinion will demonstrate, no such "traditional remedy" exists, and there is thus no question whether § 1385 extinguished a pre-existing action.

authority for a cause of action under § 2. This "paucity of legislative intent or any other kind of evidence indicating intent to create a private cause of action forces this court to conclude Congress did not intend to create a private cause of action for plaintiffs under [these statutes]." *Ryan v. Ohio Edison Co.*, 611 F.2d 1170, 1179 (6th Cir. 1979). "[I]n such a case as this, the inquiry ends there: The question whether Congress, either expressly or by implication, intended to create a private cause of action, has been answered in the negative", *Touche Ross*, 442 U.S. at 576, 99 S.Ct. at 2489, and this Court therefore need not consider any of the other standards set forth in *Cort v. Ash. See Ryan*, 611 F.2d at 1179. To the extent plaintiff's complaint purports to state a cause of action under 18 U.S.C. §§ 2, 241, 371, and 1385, then, it is dismissed.

### III.

The central legal issue in this case is plaintiff's stridently urged assertion that the "single most ancient and most fundamental element of 'due process of law' " is the right to be free of the use of the military in the enforcement of civil laws. Plaintiffs have incorporated much historical material in their argument, including the Magna Carta, the Peasants' Revolt in England in 1381, the struggle between Charles I and Parliament, the Boston Massacre, our own Civil War, Reconstruction, the 1876 Presidential election, and Kent State. While this does emphasize a tradition of Anglo-American distrust of military involvement in civilian affairs, *see Laird v. Tatum*, 408 U.S. 1, 15, 92 S.Ct. 2318, 2326, 33 L.Ed.2d 154 (1972), which this Court has no wish to denigrate, plaintiffs can point to remarkably little legal precedent in support of their claims. As defendants observe, and plaintiffs apparently concede, none of the nineteenth century cases relied upon by plaintiffs, such as *Wise v. Withers*, 7 U.S. (3

Cr.) 330, 2 L.Ed. 457 (1806), make any discussion of any such constitutional guarantee; rather the most these cases do is support the familiar proposition that members of the military, like other public officials, are subject to suit for their individual commission of common-law torts.[6]

Plaintiffs, at oral argument on these motions, tried to minimize the significance of the tort aspect of these cases by the argument that before the decision in *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the federal courts were able to protect constitutional rights, including this right against civil law enforcement by the military, through the application of federal common law. To repair the loss of the body of federal common law as a result of *Erie*, so this argument continues, the federal courts devised constitutional actions along the line of *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and that plaintiffs' right against military execution of the laws is one of these common-law torts that should now be perceived as having constitutional dimensions.

This Court does not take the view that the growth of private litigation in federal courts to vindicate constitutional rights can be so easily explained. In any case, there is one fundamental flaw in plaintiff's argument, both as it relates to the nineteenth century common-law tort cases and, indeed, plaintiffs' entire theory of a personally enforceable due process right against military involvement in civil law enforcement. The Court has been unable to locate any authority in plaintiff's cases or the historical incidents cited that would be authority for the proposition that some one *means* of government activity can be branded as so inherently evil that its very use is in and of itself a violation of due process, *regardless* of whether the activity had any impact on a litigant or his property, or his recognized

---

6.  *See also Smith v. Shaw*, 12 Johns. 222 [257] (N.Y.1815); *McConnell v. Hampton*, 12 Johns. 203 [234] (N.Y.1815); *Hyde v. Melvin*, 11 Johns. 424 [521] (N.Y.1814); *Ex parte Milligan*, 71 U.S. (4 Wall.) 2, 18 L.Ed. 281 (1866); *Beckwith v. Bean*, 98 U.S. 266, 25 L.Ed. 124 (1878); *Milligan v. Hovey*, 17 F.Cas. 380 (No. 9605) (C.C.D.Ind.1871); *Johnson v. Jones*, 44 Ill. 142 (1867); *Griffin v. Wilcox*, 21 Ind. 370 (1863).

Constitutional and common-law rights. To establish, as plaintiff seeks to do, such a generalized right against the use of a particular governmental activity per se, without ever looking to see what effect that activity actually has on people and property, appears very much like creating a right in a vacuum.

■ It is what the King was having done to his subjects or their property, far more than the mere fact that the King was using his knights rather than setting up some civil law enforcement group to accomplish his will, that would seem to be the reason underlying the Magna Carta, or all the Parliamentary protests cited by plaintiffs.[7]

■ Plaintiffs do allege specific constitutional violations under the First, Fourth and Fifth Amendments, including deprivations of their liberty, freedom of movement, right to travel, right of assembly, right to petition the government for redress of grievances, right to the free exercise of religion, right to privacy, and right to be free from unreasonable search, surveillance, seizure and imprisonment. Violations of these rights are properly the subject of a suit such as this, *see Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) (Fifth Amendment suits); *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (Fourth Amendment suits); *Dellums v. Powell*, 566 F.2d 167 (D.C.Cir.1977), *cert. denied*, 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978) (First Amendment suits), and it is on this basis that the Court denies defendants' Motion to Dismiss for failure to state a claim. But to the extent plaintiffs rely on an entirely separate private cause of action for damages for the involvement of military personnel simply because they *were* military personnel, at Wounded Knee, plaintiff's complaint is dismissed.

Again, the Court wishes to emphasize that it does not reject the valuable tradition in our legal system against allowing the military to participate in civilian affairs. Nor would the Court advocate the repeal of the statutory prohibition against military execution of the laws at 18 U.S.C. § 1385. And the violation of some specific constitutional right by members of the military, like those alleged in the complaint, certainly can be addressed by this Court.

> [W]hen presented with claims of judicially cognizable injury resulting from military intrusion into the civilian sector, federal courts are fully empowered to consider claims of those asserting such injury; there is nothing in our Nation's history or in [the] decided cases ... that can properly be seen as giving any indication that actual or threatened injury by reason of unlawful activities of the military would go unnoticed or unremedied.

*Laird v. Tatum*, 408 U.S. 1, 15–16, 92 S.Ct. 2318, 2326–2327, 33 L.Ed.2d 154 (1972).

The Court holds only today that the rights already recognized in the Constitution and mentioned above are protected against *all* government interference, and there is no basis for selecting one form of government activity and elevating any use of it, no matter what the outcome, into a separate constitutional violation upon which a private cause of action may be brought.

## IV.

■ The Court comes finally to defendants' assertion that the allegations of the complaint are vague, conclusory, and insufficient, relying on the case, among others, of *Anderson v. Sixth Judicial Circuit*, 521 F.2d 420 (8th Cir. 1975): "[w]hile pleadings in civil rights cases are to be liberally construed ... they must contain more than

---

7. In somewhat more mundane legal terms, this reasoning is analogous to the principle that the infliction of a tort by a person who happens to be a public official does not raise the occurrence to constitutional dimensions merely because of the tortfeasor's public capacity. *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Paul v. Davis*, 424 U.S.

693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). Just so, the mere enforcement of the law by officials who happen to be members of the military and involving no infringement of a citizen's recognized constitutional rights, does not present a constitutional violation giving rise to a private cause of action.

mere conclusory statements and a prayer for relief ... [w]hile plaintiffs argue that [defendants' practices] violate their constitutional rights, they set forth no facts in support of their allegations." 521 F.2d at 420–21.

As defendants point out, only plaintiffs Oscar Bear Runner and Young Bear allege that they were in Wounded Knee throughout the incident there. Lamont, Bissonette, Moves Camp, Gilbert, and Means allege presence in Wounded Knee, but for unspecified portions of the duration of the incident. White Hawk, Ghost Bear, Edgar Bear Runner, Rachel White Dress, Red Feather, Eddie White Dress, and Little Moon allege only that they are presently residents of Wounded Knee. Blakely alleges only that she is an Indian. Of all these plaintiffs, only Lamont has in any way specified her injury, in that she alleges the death of her son as a result of defendants' acts. This Court must agree that these allegations are insufficient.

Plaintiffs' complaint is largely devoted to detailed allegations about the formulation of the plans for the use of the military around Wounded Knee, the deployment of these forces, and their various uses during the incident. As the preceding section of this opinion demonstrated, this *alone* does not make out a violation of plaintiffs' constitutional rights.

It is therefore ordered that plaintiffs must, within forty days from the date of this opinion, file an amended complaint to cure the flaws herein noted.