## WILLIAMS *v.* UNITED STATES.

No. 365. Argued January 8, 1951.—Decided April 23, 1951.

*Bart A. Riley* submitted on brief for petitioner.

*Philip Elman* argued the cause for the United States. With him on the brief were *Solicitor General Perlman, Assistant Attorney General McInerney* and *Sydney Brodie.*

Mr. Justice Douglas delivered the opinion of the Court.

The question in this case is whether a special police officer who in his official capacity subjects a person suspected of crime to force and violence in order to obtain a confession may be prosecuted under § 20 of the Criminal Code, 18 U. S. C. (1946 ed.) § 52, now 18 U. S. C. § 242.

Section 20 provides in pertinent part:

> "Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects, or causes to be subjected, any inhabitant of any State, Territory, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution and laws of the United States . . . shall be fined not more than $1,000, or imprisoned not more than one year, or both."

The facts are these: The Lindsley Lumber Co. suffered numerous thefts and hired petitioner, who operated a detective agency, to ascertain the identity of the thieves. Petitioner held a special police officer's card issued by the City of Miami, Florida, and had taken an oath and qualified as a special police officer. Petitioner and others over a period of three days took four men to a paint shack on the company's premises and used brutal methods to obtain a confession from each of them. A rubber hose, a pistol, a blunt instrument, a sash cord and other implements were used in the project. One man was forced to look at a bright light for fifteen minutes; when he was blinded, he was repeatedly hit with a rubber hose

and a sash cord and finally knocked to the floor. Another was knocked from a chair and hit in the stomach again and again. He was put back in the chair and the procedure was repeated. One was backed against the wall and jammed in the chest with a club. Each was beaten, threatened, and unmercifully punished for several hours until he confessed. One Ford, a policeman, was sent by his superior to lend authority to the proceedings. And petitioner, who committed the assaults, went about flashing his badge.

The indictment charged among other things that petitioner acting under color of law used force to make each victim confess to his guilt and implicate others, and that the victims were denied the right to be tried by due process of law and if found guilty to be sentenced and punished in accordance with the laws of the state. Petitioner was found guilty by a jury under instructions which conformed with the rulings of the Court in *Screws* v. *United States,* 325 U. S. 91. The Court of Appeals affirmed. 179 F. 2d 656. The case, which is a companion to No. 26, *United States* v. *Williams, ante,* p. 70, and No. 134, *United States* v. *Williams, ante,* p. 58, decided this day, is here on certiorari. 340 U. S. 850.

We think it clear that petitioner was acting "under color" of law within the meaning of § 20, or at least that the jury could properly so find. We interpreted this phrase of § 20 in *United States* v. *Classic,* 313 U. S. 299, 326, "Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law." And see *Screws* v. *United States, supra,* 107–111. It is common practice, as we noted in *Labor Board* v. *Jones & Laughlin Co.,* 331 U. S. 416, 429, for private guards or detectives to be vested with policemen's powers. We know from the record that that is the policy of Miami, Florida. Moreover, this was an investi-

gation conducted under the aegis of the State, as evidenced by the fact that a regular police officer was detailed to attend it. We need go no further to conclude that the lower court, to whom we give deference on local law matters, see *Gardner* v. *New Jersey,* 329 U. S. 565, 583, was correct in holding that petitioner was no mere interloper but had a semblance of policeman's power from Florida. There was, therefore, evidence that he acted under authority of Florida law; and the manner of his conduct of the interrogations makes clear that he was asserting the authority granted him and not acting in the role of a private person. In any event, the charge to the jury drew the line between official and unofficial conduct which we explored in *Screws* v. *United States, supra,* 111, and gave petitioner all of the protection which "color of" law as used in § 20 offers.

The main contention is that the application of § 20 so as to sustain a conviction for obtaining a confession by use of force and violence is unconstitutional. The argument is the one that a clear majority of the Court rejected in *Screws* v. *United States,* and runs as follows:

Criminal statutes must have an ascertainable standard of guilt or they fall for vagueness. See *United States* v. *Cohen Grocery Co.,* 255 U. S. 81; *Winters* v. *New York,* 333 U. S. 507. Section 20, it is argued, lacks the necessary specificity when rights under the Due Process Clause of the Fourteenth Amendment are involved. We are pointed to the course of decisions by this Court under the Due Process Clause as proof of the vague and fluid standard for "rights, privileges, or immunities secured or protected by the Constitution" as used in § 20. We are referred to decisions where we have been closely divided on whether state action violated due process. More specifically we are cited many instances where the Court has been conspicuously in disagreement on the illegal char-

acter of confessions under the Due Process Clause. If the Court cannot agree as to what confessions violate the Fourteenth Amendment, how can one who risks criminal prosecutions for his acts be sure of the standard? Thus it is sought to show that police officers such as petitioner walk on ground far too treacherous for criminal responsibility.

Many criminal statutes might be extended to circumstances so extreme as to make their application unconstitutional. Conversely, as we held in *Screws* v. *United States,* a close construction will often save an act from vagueness that is fatal. The present case is as good an illustration as any. It is as plain as a pikestaff that the present confessions would not be allowed in evidence whatever the school of thought concerning the scope and meaning of the Due Process Clause. This is the classic use of force to make a man testify against himself. The result is as plain as if the rack, the wheel, and the thumb screw—the ancient methods of securing evidence by torture (*Brown* v. *Mississippi,* 297 U. S. 278, 285–286; *Chambers* v. *Florida,* 309 U. S. 227, 237)—were used to compel the confession. Some day the application of § 20 to less obvious methods of coercion may be presented and doubts as to the adequacy of the standard of guilt may be presented. There may be a similar doubt when an officer is tried under § 20 for beating a man to death. That was a doubt stirred in the *Screws* case; and it was the reason we held that the purpose must be plain, the deprivation of the constitutional right willful. But where police take matters in their own hands, seize victims, beat and pound them until they confess, there cannot be the slightest doubt that the police have deprived the victim of a right under the Constitution. It is the right of the accused to be tried by a legally constituted court, not by a kangaroo court. Hence when officers wring confessions from the accused

by force and violence, they violate some of the most fundamental, basic, and well-established constitutional rights which every citizen enjoys. Petitioner and his associates acted willfully and purposely; their aim was precisely to deny the protection that the Constitution affords.* It was an arrogant and brutal deprivation of rights which the Constitution specifically guarantees. Section 20 would be denied the high service for which it was designed if rights so palpably plain were denied its protection. Only casuistry could make vague and nebulous what our constitutional scheme makes so clear and specific.

An effort, however, is made to free Williams by an extremely technical construction of the indictment and charge, so as to condemn the application of § 20 on the grounds of vagueness.

The indictment charged that petitioners deprived designated persons of rights and privileges secured to them by the Fourteenth Amendment. These deprivations were defined in the indictment to include "illegal" assault and battery. But the meaning of these rights in the context of the indictment was plain, viz. *immunity from the use*

---

*The trial judge charged in part on this phase of the case: "The law denies to anyone acting under color of law, statute, ordinance, regulation or custom the right to try a person by ordeal; that is, for the officer himself to inflict such punishment upon the person as he thinks the person should receive. Now in determining whether this requisite of willful intent was present in this case as to these counts, you gentlemen are entitled to consider all the attendant circumstances; the malice, if any, of the defendants toward these men; the weapon used in the assault, if any; and the character and duration of the investigation, if any, of the assault, if any, and the time and manner in which it was carried out. All these facts and circumstances may be taken into consideration from the evidence that has been submitted for the purpose of determining whether the acts of the defendants were willful and for the deliberate and willful purpose of depriving these men of their Constitutional rights to be tried by a jury just like everyone else."

*of force and violence to obtain a confession.* Thus count 2 of the indictment charges that the Fourteenth Amendment rights of one Purnell were violated in the following respects:

". . . the right and privilege not to be deprived of liberty without due process of law, the right and privilege to be secure in his person while in the custody of the State of Florida, the right and privilege not to be subjected to punishment without due process of law, the right and privilege to be immune, while in the custody of persons acting under color of the laws of the State of Florida, from illegal assault and battery by any person exercising the authority of said State, and the right and privilege to be tried by due process of law and if found guilty to be sentenced and punished in accordance with the laws of the State of Florida; that is to say, on or about the 28th day of March, 1947, the defendants arrested and detained and caused to be arrested and detained the said Frank J. Purnell, Jr., and brought and caused him to be brought to and into a certain building sometimes called a shack on the premises of the Lindsley Lumber Co., at or near 3810 N. W. 17th Avenue, in said City of Miami, Florida, and did there detain the said Frank J. Purnell, Jr., and while he was so detained the defendants did then and there illegally strike, bruise, batter, beat, assault and torture the said Frank J. Purnell, Jr., in order illegally to coerce and force the said Frank J. Purnell, Jr., to make an admission and confession of his guilt in connection with the alleged theft of personal property, alleged to be the property of said Lindsley Lumber Co., and in order illegally to coerce and force the said Frank J. Purnell, Jr., to name and accuse other persons as participants in alleged thefts of personal

property, alleged to be the property of the said Lindsley Lumber Co., and for the purpose of imposing illegal summary punishment upon the said Frank J. Purnell, Jr."

The trial judge in his charge to the jury summarized Count 2 as meaning that the defendants beat Purnell "for the purpose of forcing him to make a confession and for the purpose of imposing illegal summary punishment upon him." He further made clear that the defendants were "not here on trial for a violation of any law of the State of Florida for assault" nor "for assault under any laws of the United States." There cannot be the slightest doubt from the reading of the indictment and charge as a whole that the defendants were charged with and tried for one of the most brutal deprivations of constitutional rights that can be imagined. It therefore strains at technicalities to say that any issue of vagueness of § 20 as construed and applied is present in the case. Our concern is to see that substantial justice is done, not to search the record for possible errors which will defeat the great purpose of Congress in enacting § 20.

*Affirmed.*

Mr. Justice Black dissents.

Mr. Justice Frankfurter, Mr. Justice Jackson and Mr. Justice Minton, dissenting.

Experience in the effort to apply the doctrine of *Screws* v. *United States,* 325 U. S. 91, leads Mr. Justice Frankfurter, Mr. Justice Jackson and Mr. Justice Minton to dissent for the reasons set forth in dissent in that case.