## BROWN v. UNITED STATES.

### No. 11745.

United States Court of Appeals
Sixth Circuit.

May 18, 1953.

248

Paul F. Bumpus, Nashville, Tenn. (Paul F. Bumpus, L. Buchanan Loser, Nashville, Tenn., on the brief), for appellant.

James M. Swiggart, Nashville, Tenn. (Dick L. Johnson, Nashville, Tenn., Charles B. Murray and Sydney Brodie, Washington, D. C., on the brief), for appellee.

Before ALLEN, MARTIN and MILLER, Circuit Judges.

PER CURIAM.

This is an appeal from a judgment of the District Court sentencing the appellant in accordance with a jury verdict finding him guilty of violating 18 U.S.C.Section 371, the conspiracy statute. The trial court dismissed eight substantive counts against the appellant included in an information filed against him and his codefendant, Joe Colagross, deputy sheriff of Maury County, Tennessee. As to appellant, therefore, the case was tried upon Count 1 of the information, which charged him with conspiring with his codefendant Colagross to violate 18 U.S.C.Section 242, by depriving certain named inhabitants of the State of Tennessee and of the United States and other inhabitants unknown to the District Attorney, of the rights, privileges and immunities secured to them under the Fourteenth Amendment to the Constitution of the United States. The information in substance charged that the defendants deprived the persons named of "The right and privilege not to be deprived of liberty without due process of law; the right and privilege to be tried by due process of law for an alleged offense under the laws of the State, and if found guilty to be sentenced and punished in accordance with the laws of the State." The information averred that it was the willful plan and purpose of the conspiracy that codefendant Colagross would, while acting as a deputy sheriff and under color of law "pursuant to an arrangement with and at the request of

defendant Paul Brown, willfully and without legal cause arrest and take into custody" each of the persons named, and place him in jail without giving him a hearing before a magistrate or other constituted officer where each person would be imprisoned and not released until he paid a sum of money allegedly due and owing to the defendant Paul Brown. It was charged that the defendants well knew that each of the arrests and imprisonments would be unjustified and intended illegally to extort money to pay the alleged debt to defendant Brown.

■ The indictment stated a valid charge with reference to conspiracy to violate 18 U.S.C.Section 242 which provides, among other things, that: "Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any inhabitant of any State, Territory, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States * * * shall be fined not more than $1,000 or imprisoned not more than one year, or both." The United States Constitution protects rights guaranteed by the Fourteenth Amendment. Screws v. United States, 325 U.S. 91, 103–105, 65 S.Ct. 1031, 89 L.Ed. 1495; Williams v. United States, 341 U.S. 97, 101, 71 S.Ct. 576, 95 L.Ed. 774. These rights include the right to be tried by a legally constituted court, the right not to be deprived of liberty without due process and the right not to be arrested by an officer acting arbitrarily without cause and for an ulterior purpose. Williams v. United States, supra, 341 U.S. at page 101, 71 S.Ct. at page 579; Wolf v. Colorado, 338 U.S. 25, 27, 28, 69 S.Ct. 1359, 93 L.Ed. 1782; Catlette v. United States, 4 Cir., 132 F.2d 902, 906.

The jury found appellant and Colagross guilty under Count 1.

■ The evidence is clearly sufficient to support the verdict. Appellant operated a business in which he loaned money principally to negroes at the interest rate of 25% a week. Although only small sums were loaned, the business ran close to $500.00 to $1,000.00 a week. The period covered by the information was about a

year and evidence was given of a regular pattern of operation. To secure the loan a paper would be signed by the borrower, which turned out to be a check payable to Paul Brown Taxicab Company, a business owned by appellant, or to cash in the total amount of the principal loan plus the 25% interest due and owing at the end of a week. The loans were made sometimes by appellant Brown but usually by his employee Kirk. Nine borrowers testified. Only one of these had a bank account. It was not claimed that they represented that they had money in the bank. If a loan was not paid when due, the check was given to Colagross to collect. None of the checks except that of Miller were sent through a bank for collection. Certain of the borrowers named in the information were placed in jail or under restraint in official custody for nonpayment of the loan. In every case the borrowers were threatened with jail or a "bad check" charge. Two witnesses, a borrower and his sister, said that Colagross told them that the borrower had forged a check. The borrowers were released only when members of their family or perhaps the "boss man" paid the face amount of the check plus "costs of being arrested." This included the 25% interest a week which mounted rapidly.

The evidence sustains the jury's conclusion that the appellant assumed that the borrowers had no bank accounts, intended that the checks secured by him or his agent Kirk should be used by Colagross as a weapon to compel payment through a threatened "bad check" charge, and gave instructions to that effect.

Colagross came regularly to appellant's taxi stand and asked if there was any business for him. He handled all of appellant's check collection business and received regular fees for his part in the transaction.

Appellant was asked by the FBI about his loan business and categorically denied having any such business. At the trial he stated that as a favor to persons in hard luck he had made small loans. He said that he wanted these people to sign checks because he "had to have security of some kind." In effect he conceded that he could have had the borrowers sign notes as se-

curity instead of checks, which subjected each borrower to a possible bad check charge.

The principal legal contention is that a private citizen not acting under color of law may not be charged with having violated 18 U.S.C.Section 371 by conspiring with a deputy sheriff acting under color of state law to violate 18 U.S.C.Section 242.

■ Appellant claims that, since he is a private citizen not shown to be acting under color of law, he cannot be found guilty of violating 18 U.S.C.Section 242, because the constitutional rights protected in Section 242 are secured against the state and persons acting in the name of the state, rather than against private persons. Commonwealth of Virginia v. Rives, 100 U.S. 313, 318, 25 L.Ed. 667; United States v. Cruikshank, 92 U.S. 542, 544, 23 L.Ed. 588; Screws v. United States, supra, 325 U.S. at page 110, 65 S.Ct. at page 1039. Therefore, he urges that he cannot be guilty of conspiracy to violate Section 242. This contention ignores the fact that appellant was convicted not under Section 242 but under Section 371. The District Court dismissed the substantive counts which charged appellant with violating Section 242 but submitted the conspiracy count to the jury. This action was clearly correct.

■ A state law enforcement officer who, under color of state law, willfully and without cause arrests and imprisons an inhabitant of the United States for the purpose of extortion deprives him of a right, privilege and immunity secured and protected by the Constitution of the United States and commits an offense defined under 18 U.S.C.Section 242. An agreement between state law enforcement officers and others to engage in such extortion under color of state law is a conspiracy to violate Section 242 under 18 U.S.C.Section 371. Culp v. United States, 8 Cir., 131 F.2d 93, 98.

■ The evidence established and the jury found that appellant was the prime mover in this system of extortion. It was carried on at his direction, for his benefit, and for a considerable period of time. The fact that appellant was a private citizen and legally incapable of violating Section 242 does not render him immune from a charge of violating 18 U.S.C.Section 371 by engaging in an agreement with a law enforcement officer acting under color of state law to violate 18 U.S.C.Section 242. United States v. Holte, 236 U.S. 140, 145, 35 S.Ct. 271, 59 L.Ed. 504. As declared in Chadwick v. United States, 6 Cir., 141 F. 225, at page 237, opinion by Judge Lurton: "It is sufficient if any one of the parties to a conspiracy is legally capable of committing the offense, although the other parties may not have been." As was stated in United States v. Trierweiler, D.C., 52 F. Supp. 4, at page 7:

"It is immaterial that they themselves may not have had the capacity to violate the statute for they became liable criminally if they conspired to violate that statute and if one or more of their fellow conspirators had the capacity to commit the substantive offense." Barron v. United States, 1 Cir., 5 F.2d 799, 801, 802; Haggerty v. United States, 7 Cir., 5 F.2d 224, 225; Kaufman v. United States, 2 Cir., 212 F. 613, 618.

In accord with this conclusion are Koehler v. United States, 5 Cir., 189 F.2d 711; Apodaca v. United States, 10 Cir., 188 F.2d 932.

■ The presence of Colagross, who was a state officer, and his active cooperation with appellant furnished the color of law or "pretense" of law, Screws v. United States, supra, 325 U.S. at page 111, 65 S. Ct. at page 1040, required as to appellant. United States v. Lynch, D.C., 94 F.Supp. 1011, affirmed, 5 Cir., 189 F.2d 476, certiorari denied 342 U.S. 831, 72 S.Ct. 50, 96 L.Ed. 629. Cf. Williams v. United States, 5 Cir., 179 F.2d 656, 661, affirmed 341 U.S. 97, 71 S.Ct. 576, 95 L.Ed. 774.

The judgment of the District Court is affirmed.