**UNITED STATES of America**

**v.**

**Joel Donald DREER, Appellant.**

**No. 71-1514.**

United States Court of Appeals, Third Circuit.

Argued Dec. 16, 1971.

Decided March 9, 1972.

Stanford Shmukler, Philadelphia, Pa., for appellant.

Thomas J. McBride, Asst. U. S. Atty., Philadelphia, Pa., for appellee.

Before BIGGS, VAN DUSEN and HUNTER, Circuit Judges.

## OPINION OF THE COURT

BIGGS, Circuit Judge:

The appellant Dreer was found guilty on six counts of an indictment alleging mail fraud. 18 U.S.C. § 1341. The substance of each count *mutatis mutandis* is the same and varies only in the final paragraph.[1] Count I of the indictment is typical and charges that Dreer "doing business as Terminal Warehouse Company, a moving company," with intent to defraud, discounted spurious invoices "to one Sol Goldstein" of Produce Factors Corporation, the purported invoices being for the transportation of goods and household furnishings of members of the Armed Forces. Count I alleges that one of the means of effecting the fraud was a drayage contract, referred to elsewhere as a "Security Agreement", between Terminal Warehouses, Inc., Dreer's company, and Produce Factors Corporation, Goldstein's company. Paragraph 4 of Count I states: "It was

further part of the scheme or artifice to defraud that the defendant would and did present to the said Sol Goldstein numerous invoices which contained false and fraudulent representations. . . ." Paragraphs 4 and 5 recite that Dreer received from "Sol Goldstein payment at a discount rate for these [fictitious] invoices" and that Dreer well knew that the invoices were "false, fraudulent and fictitious."

 Dreer points out that there is variance between the allegations of the indictment and the proof. He asserts in substance that the dealings in respect to the spurious invoices were between the two companies, as was the Security Agreement, really a factoring agreement, whereby Produce Factors Corporation discounted Terminal Warehouse Inc.'s fictitious paper.[2] His contentions are correct. He points to checks signed by Goldstein drawn by Produce Factors Corporation, made payable to and paid to Terminal Warehouses, Inc. Other evidence which cannot be doubted points to the employment of corporate entities in the transactions referred to in the indictment. The fact that Dreer employed Terminal Warehouses, Inc. as the agent of his fraud, is not fatal to the indictment for the weight of the evidence, as found by the District Judge, clearly identifies him, if not as principal, certainly as an aider and abettor, and therefore equally liable to criminal sanctions. 18 U.S.C. § 2.

 Dealing now with the fact that the indictment names Sol Goldstein, as distinguished from his company, Produce Factors Corporation, as the subject of the mail fraud, there was no attempt to pierce the veil of corporate entity. There was evidence that Goldstein was the president of Produce Factors Corporation; Dreer asserts, therefore, that

---

1. The Government's case is based on false invoices based on charges incurred in shipping goods and household furnishings of six named members of the United States Armed Forces. The only change from count to count is the substitution in the final paragraph of the name of one officer or non-commissioned officer for that of another; *vide*, in Count I, Lt. Col. Edmund Smieckowski, Jr., Count II, Colonel Charles Korbin, Count III, Major Francis Policare, etc.

2. At 88% of face value.

the government is put in the position of arguing, as it were, that if Dreer had given false invoices to a company such as General Motors Corporation it would constitute a scheme to defraud the president of that company. But it was stated in Berger v. United States, 295 U.S. 78, 82, 55 S.Ct. 629, 630, 79 L.Ed. 1314 (1935), that "The general rule that allegations and proof must correspond is based upon the obvious requirements (1) that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at the trial; and (2) that he may be protected against another prosecution for the same offense [citing cases]."[3] In this case there is no doubt that the two specifications set out above were fulfilled.

It has long been the rule in this circuit, as in the other circuits, respecting mail fraud that: "This crime against the United States . . . [is] the use of its mails in carrying out the scheme to defraud, and it was, therefore, necessary for the government to allege in the indictment, and prove at the trial, that the defendant devised a scheme or artifice to defraud; used the mails; and either sent or received mail connected with the scheme. If he were indicted for committing a fraud, of course it would be necessary to name the persons defrauded, and proof of fraud committed upon others would be improper, but, as we have said, the crime with which he is charged to have conspired to commit against the United States is not to defraud any person or persons, but to use the mails in carrying out a scheme to defraud, and the persons communicated with through the mails are only important to identify and show the scheme." United States v. Marrin, 159 F. 767, 774 (E.D.Pa.1908), affirmed 167 F. 951, 955–956 (3rd Cir. 1909).

We reiterate that the crime here was mail fraud, and though Goldstein's company, Produce Factors Corporation, was defrauded rather than Goldstein himself, the crime was committed against the United States by the use of its mails. This is the essential point. The evidence was overwhelming as to Dreer's actions in effecting the fraud. It cannot be maintained that he was not well aware of the basis of his indictment or that he was taken by surprise for it was stipulated by him and by his attorney that two government witnesses would testify that none of the invoices set forth in the indictment was contracted for by either McGuire Air Force Base or Fort Dix, nor was any payment ever made on them. Dreer's testimony did not contradict this statement to any substantial degree.[4] As was said by Mr. Chief Justice Warren in Smith v. United States, 360 U.S. 1, 9, 79 S.Ct. 991, 996, 3 L.Ed.2d 1041 (1959): "This Court has, in recent years, upheld many convictions in the face of questions concerning the sufficiency of the charging papers. Convictions are no longer reversed because of minor and technical deficiencies which did not prejudice the accused. E. g., Hagner v. United States, 285 U.S. 427 [52 S.Ct. 417, 76 L.Ed. 861]; Williams v. United States, 341 U.S. 97 [71 S.Ct. 576, 95 L.Ed. 774]; United States v. Debrow, 346 U.S. 374 [74 S.Ct. 113, 98 L.Ed. 92]. This has been a salutary development in the criminal law." See also our recent decision in United States v. DeCavalcante, 440 F.2d 1264, 1272 (3rd Cir. 1971), wherein it was held that a defendant must demonstrate prejudice where the evidence offered at trial proves facts materially different from those alleged in the indictment. No prejudice is asserted by Dreer here. In *DeCavalcante* this court also ruled that the variance was not sufficiently substantial to amount to a constructive

3. There are other considerations, of course, but they need not be discussed here.

4. Record, Document No. 21.

amendment to the indictment. Here the variance is almost immaterial. Cf. Stirone v. United States, 361 U.S. 212, 217–218, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), in which Stirone was convicted on a charge not laid in the indictment and his judgment of conviction was reversed by the Supreme Court. Compare also United States v. Williams, 412 F.2d 625 (3rd Cir. 1969). See Fed.R.Crim. Proc., Rule 7(c), 18 U.S.C.

No valid issue of double jeopardy presents itself here. Even if we take the broadest possible view in favor of Dreer the government would be prevented from trying him again on the facts in this record by the statements made on the Government's brief at 6–7. The first paragraph is typical and will suffice to demonstrate our point: "A review of the evidence will show that there is no question but that all dealings involved in this case were between Mr. Goldstein and Mr. Dreer. Sol Goldstein on direct testimony constantly referred to himself and to Mr. Dreer as being the parties to the transactions."

Dreer insists that his sentence is invalid, asserting that the Trial Judge received improper presentence information respecting him. 18 U.S.C. § 3577 provides: "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." The information received by the Trial Judge was perfectly proper.

Dreer also asserts that he was not permitted to examine the presentence report. Rule 32(c) (2), Fed.R. Crim.Proc., 18 U.S.C., provides that the sentencing Judge may permit, within his discretion, a defendant to examine his presentence report but the rule does not give the defendant a right to examine the report. Dreer did not ask prior to sentencing to be permitted to examine the report. There is no error here.

Dreer insists that he was not given enough time to bring his psychiatrist from Florida to testify on his behalf but twenty-one days' notice of sentencing was given to Dreer. This was ample time within which to bring to Philadelphia a doctor from Florida.

Finally, Dreer insists that his sentence was "extremely heavy" and should be set aside. The evidence of Dreer's guilt was overwhelming, costing Goldstein's company, Produce Factors Corporation, approximately $56,000. Dreer was found guilty on six counts, each setting out a separate swindle, and could have received jail sentences amounting to thirty years. He was sentenced to three years imprisonment on Count 1, and three years imprisonment on Count 2, that sentence to be served consecutively to the sentence imposed on Count 1. Sentences upon Counts 3, 4, 5 and 6 were suspended. Dreer's contention is frivolous.

The judgment of conviction will be affirmed.