UNITED STATES of America, Plaintiff-Appellee,

v.

Ray A. KING, William B. Smith, Jr., and Donald Edward Wettlaufer, Defendants-Appellants.

No. 78–5379
Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Jan. 3, 1979.

Rehearing and Rehearing En Banc Denied Jan. 26, 1979.

---

would make out a legal excuse from performance under Sections 2–615 and 2–616.

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.

Wesley R. Asinof, Fayetteville, Ga., for defendants-appellants.

William L. Harper, U.S. Atty., C. Michael Abbott, Asst. U.S. Atty., Atlanta, Ga., Karen E. Moore, Civil Rights Division, U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before RONEY, GEE and FAY, Circuit Judges.

PER CURIAM:

Appellants are former Mayor King, Police Chief Smith, and Police Officer Wettlaufer of Mountain View, Georgia. They were jointly indicted for violation of 18 U.S.C. §§ 241 and 242. The former makes it a felony to conspire to interfere with a citizen in the free exercise or enjoyment of any constitutional or federal right. Section 242 makes it a misdemeanor willfully under color of law to subject an inhabitant of any state, district, or territory to deprivation of any constitutional or federal right, privilege, or immunity. The indictment stemmed from an alleged beating of David Anderson, while he was in appellants' custody, in an attempt to force a confession that Anderson and his brother were in town to execute a "contract" on the mayor or police chief. Appellants were convicted on both counts.

Anderson and his brother were arrested late one night after Officer Hunnicutt observed Anderson behaving in a suspicious manner near City Hall. Anderson testified that he was taken into the mayor's office, where appellants questioned him about the contract, attempted to get Anderson to hit one of them, and then hit him repeatedly when he would not do so. Appellants then took him outside to the area where Hunnicutt had first observed him. They urged him to jump a chain link fence and run away, which he refused to do; they then planted a knife in his pocket, tossed him over the fence, and again tried to make him run.

Officer Hunnicutt was present during some of the beating in the mayor's office, and his testimony corroborated that of Anderson. Hunnicutt also testified that appellant Smith told him to find a "drop gun"[1] to plant on Anderson, but that he could find only a pocket knife, which appellants placed in Anderson's pocket. Hunnicutt did not see appellants throw Anderson over the fence, for he was walking toward the tree where he initially had observed Anderson. He did hear Anderson refusing to jump just prior to his landing on the far side of the fence. At that point Hunnicutt realized that Anderson's life was in danger, and he moved to his side and advised Anderson to stay close beside him. Both Anderson and Hunnicutt testified that appellant King was brandishing a pistol during the incident outside City Hall.

There was additional corroborative testimony. A police officer testified that on the following morning Anderson complained of pain from a beating and requested to be taken to a hospital. The officer observed cuts, scratches, and "little whelps" on Anderson's back. On advice from appellant Smith, the officer released Anderson, who went to a hospital. The admitting physician testified to recently-formed raised and reddened areas on Anderson's back and bruises on his legs. Anderson's brother and

---

1. A drop gun is a weapon dropped at the scene when a police officer has killed someone in the line of duty. The presence of a weapon protects the officer against accusations of killing an unarmed person.

girl friend testified to his injuries. There was also testimony of banging or thumping noises in the mayor's office at the time of the beating.

Appellants testified in their own behalf. They denied any assault, but stated that their questioning followed a "good guy-bad guy" pattern and that they shouted threats and pounded on desks and file cabinets. They admitted threatening to throw Anderson over the fence, but said that he had jumped and was not thrown. They denied all knowledge of a drop gun or knife. King and Wettlaufer testified that Anderson's brother had shoved him against a metal bunk in the jail cell, thereby causing any marks on his back. Smith testified that Anderson's back had hit the chain link fence when he jumped over it.

■ Appellants raise two issues of statutory construction of § 241. First, they argue that Anderson is not a citizen within the meaning of the statute because he is a convicted felon. Section 241 protects citizens, whereas § 242 protects inhabitants from similar intrusions. Appellants interpret this distinction as limiting § 241 to a small number of rights, such as the right to vote, hold public office, serve on a jury, and not be imprisoned.

The argument is untenable. The U.S. Supreme Court has held in no uncertain terms that § 241 encompasses "*all* of the rights and privileges secured to citizens by *all* of the Constitution and *all* of the laws of the United States." *United States v. Price*, 383 U.S. 787, 800, 86 S.Ct. 1152, 1160, 16 L.Ed.2d 267 (1965). This includes rights secured by the Thirteenth, Fourteenth, and Fifteenth Amendments. 383 U.S. at 805, 86 S.Ct. 1152. Section 241 has been utilized to protect the right to be a witness in a federal trial, *United States v. Guillette*, 547 F.2d 743, 748 (2d Cir. 1976), and the right to be free from unreasonable search. *United States v. Liddy*, 177 U.S.App.D.C. 1, 6–7, 542 F.2d 76, 81–82 (1976). In *Price* the Supreme Court outlined the legislative his-

tory of the two statutes and rejected arguments that they must be interpreted to preclude duplication of rights protected. 383 U.S. at 802 n. 11, 86 S.Ct. 1152.

This Court has held that convicted felons in prisons do not forfeit all of their constitutional rights.[1] *E. g., Newman v. Alabama*, 503 F.2d 1320, 1329 n. 13 (5th Cir. 1974), *cert. denied*, 421 U.S. 948, 95 S.Ct. 1680, 44 L.Ed.2d 102. *See Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

■ Appellants also argue that there is no protected right to be free from assault for the purpose of obtaining a confession when that confession is not sought to be introduced as evidence at trial. This right, however, has been enunciated clearly in several decisions construing § 242. *E. g., Williams v. United States*, 341 U.S. 97, 101–02, 71 S.Ct. 576, 95 L.Ed. 774 (1951); *Pool v. United States*, 260 F.2d 57, 65–66 (9th Cir. 1958); *Apodaca v. United States*, 188 F.2d 932, 936 (10th Cir. 1951). Appellants concede, as they must, that the right not to be assaulted by a police officer while lawfully in custody is protected under § 242. *United States v. Stokes*, 506 F.2d 771, 774–75 (5th Cir. 1975). Appellants contend in effect that these rights are not protected under § 241.

The argument is frivolous. Any right protected under § 242 must be included in those protected under § 241. Initially § 242 was limited to a few specified rights, while § 241 was not so restricted. Section 242 was later amended to include as broad a range of rights as those protected by § 241. *See United States v. Price*, 383 U.S. 787, 802–03, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966). Thus the legislative history undermines appellants' argument. Additionally the *Price* Court emphasized that § 241 was to be interpreted as broadly as its language permitted. 383 U.S. at 801, 86 S.Ct. 1152. Both the right not to be assaulted by a police officer while lawfully in custody and

---

1. In a recent opinion with a different factual setting than the one before us today, we indicated that § 241 applies to convicted felons.

*See United States v. Purvis*, 580 F.2d 853, at 857 (5th Cir. 1978).

the right not to be assaulted for the purpose of obtaining a confession are rights made specific by court decisions and therefore are protected under § 241. *See Screws v. United States,* 325 U.S. 91, 104, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945).

■ Appellants also argue that a statement by the prosecutor during cross examination of King was so prejudicial and inflammatory that it requires reversal of their convictions. The prosecutor asked King whether he had stated to investigators in a similar situation that he would lie to protect his police officers. The trial judge overruled defense counsel's objection, and King twice asked for further details about the alleged statement. The prosecutor replied that she was referring to a 1974 investigation of allegations that police officers had beaten a prisoner.[2] The judge denied a defense motion for a mistrial, but ruled that the evidence was inadmissible and instructed the jury to disregard the question. As the jury deliberated for a number of hours and twice indicated an inability to reach a verdict, appellants contend that impermissible reference to another incident of police brutality may have swayed their decision.

This Court need not determine whether the prosecutor's statement was error or whether any error was cured by the judge's instruction, *see United States v. Klein,* 546 F.2d 1259, 1263 (5th Cir. 1977), for any error was harmless. The weight of the evidence was overwhelming and appellants' explanations of the marks on Anderson's back were unconvincing. *See Klein, supra* at 1263.

AFFIRMED.

2. "BY MS. MOORE:

Q. Mr. King, isn't it a fact that in 1974 you told two investigators for the Clayton County DA's office in a situation similar to this that you would like (sic) to protect your police officers?

MR. ASIMOF: May it please Your Honor, we object to that as being—

THE COURT: I didn't hear the full question on that.

MS. MOORE: Your Honor, I have asked him—

THE COURT: What was the question again?

MS. MOORE: I asked Mr. King whether or not he told two investigators for the Clayton County District Attorney's Office in a situation similar to this that he would lie to protect his police officers.

THE COURT: I overrule the objection.

MS. MOORE: Thank you, Your Honor.

BY MS. MOORE:

Q. What was the answer, sir?

A. I don't remember talking to—are you talking about the police department or what, ma'am?

Q. Sir, I'm talking about an interview in February, 1974.

A. With what type investigator?

Q. This was an investigation of two officers of yours who had allegedly beaten a prisoner in their custody in Mountain View."